Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/07/2016 09:07 AM CDT

State of Nebraska, appellee, v.
Dominick L. Dubray, appellant.
___ N.W.2d ___

Filed October 7, 2016.    No. S-15-1032.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals
   from postconviction proceedings, an appellate court reviews de novo
   a determination that the defendant failed to allege sufficient facts to
   demonstrate a violation of his or her constitutional rights or that the
   record and files affirmatively show that the defendant is entitled to
   no relief.
2. **Postconviction: Appeal and Error.** Whether a claim raised in a post-
   conviction proceeding is procedurally barred is a question of law, which
   an appellate court reviews de novo.
3. **Effectiveness of Counsel.** A claim that defense counsel provided inef-
   fective assistance presents a mixed question of law and fact.
4. **Effectiveness of Counsel: Appeal and Error.** When reviewing a claim
   of ineffective assistance of counsel, an appellate court reviews the fac-
   tual findings of the lower court for clear error, while the determination
   of whether counsel's performance was deficient and whether the defend-
   ant suffered prejudice as a result under the *Strickland v. Washington*,
   466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test is reviewed
   de novo.
5. **Postconviction: Effectiveness of Counsel: Appeal and Error.** When
   a postconviction petition alleging ineffective assistance of counsel is
   dismissed on the pleadings without an evidentiary hearing, there are no
   factual findings of the lower court, and thus an appellate court reviews
   the entirety of the lower court's dismissal de novo.
6. **Postconviction: Constitutional Law.** Under the Nebraska Postconviction
   Act, a prisoner in custody may file a petition for relief on the grounds
   that there was a denial or infringement of the prisoner's constitutional
   rights that would render the judgment void or voidable. This category of
   relief is very narrow.

7. **Postconviction: Records.** Under Neb. Rev. Stat. § 29-3001(2) (Cum. Supp. 2014), a prisoner is entitled to an evidentiary hearing on his or her claim for postconviction relief, unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief.

8. **Postconviction: Constitutional Law: Proof.** In order to be entitled to an evidentiary hearing, a prisoner must allege facts in the petition for postconviction relief that, if proved, would constitute a violation of his or her rights under the U.S. or Nebraska Constitution.

9. **Postconviction.** A prisoner is not entitled to an evidentiary hearing on the basis of claims that present only conclusory statements of law or fact.

10. **Postconviction: Constitutional Law.** A claim of actual innocence may be a sufficient allegation of a constitutional violation under the Nebraska Postconviction Act.

11. **Postconviction: Evidence.** The essence of a claim of actual innocence is that the State's continued incarceration of such a petitioner without an opportunity to present newly discovered evidence is a denial of procedural or substantive due process. The threshold to entitle a prisoner to an evidentiary hearing on such a postconviction claim is extraordinarily high.

12. **Postconviction: Evidence: Appeal and Error.** Claims of insufficiency of evidence that were or could have been raised on direct appeal are procedurally barred from being raised in a postconviction action.

13. **Postconviction: Appeal and Error.** A petition for postconviction relief may not be used to obtain review of issues that were or could have been reviewed on direct appeal.

14. ____: ____. Any attempts to raise issues at the postconviction stage that were or could have been raised on direct appeal are procedurally barred.

15. **Criminal Law: Constitutional Law: Right to Counsel.** The Sixth Amendment to the U.S. Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense.

16. **Right to Counsel: Effectiveness of Counsel.** The right to counsel has been interpreted to include the right to effective counsel.

17. **Effectiveness of Counsel: Proof: Appeal and Error.** Under the standard established by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), claims of ineffective assistance of counsel by criminal defendants are evaluated using a two-prong analysis: first, whether counsel's performance was deficient and, second, whether the deficient performance was of such a serious nature so as to deprive the defendant of a fair trial.

18. **Effectiveness of Counsel.** A court may address the two elements of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, deficient performance and prejudice, in either order.

19. **Postconviction: Effectiveness of Counsel: Proof.** To show that the performance of a prisoner's counsel was deficient, it must be shown that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

20. **Effectiveness of Counsel: Proof.** To establish the prejudice element of the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a defendant must show that the counsel's deficient performance was of such gravity to render the result of the trial unreliable or the proceeding fundamentally unfair. This prejudice is shown by establishing that but for the deficient performance of counsel, there is a reasonable probability that the outcome of the case would have been different.

21. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her appellate counsel, all issues of ineffective assistance of trial counsel that are known to the defendant or are apparent from the record must be raised on direct appeal. If the issues are not raised, they are procedurally barred.

22. **Postconviction: Effectiveness of Counsel: Appeal and Error.** Claims of ineffective assistance of appellate counsel may be raised for the first time on postconviction review.

23. **Effectiveness of Counsel: Appeal and Error.** When analyzing a claim of ineffective assistance of appellate counsel, courts will often begin by determining whether the defendant suffered prejudice by appellate counsel's failure to raise a claim.

24. ____: ____. If the claimed deficiency of appellate counsel's performance is the failure to raise a claim on appeal, the court will look at the strength of the claim that appellate counsel failed to raise.

25. ____: ____. When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.

26. **Criminal Law: Evidence: Appeal and Error.** In reviewing a claim of insufficiency of the evidence, an appellate court simply asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

27. **Trial: Pleas: Mental Competency.** A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.

28. **Postconviction: Mental Competency: Effectiveness of Counsel: Proof.** In order to demonstrate prejudice from counsel's failure to investigate competency and for failure to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was actually incompetent and that the trial court would have found the defendant incompetent had a competency hearing been conducted.

29. **Postconviction.** Mere conclusions of fact or law are not sufficient to entitle a petitioner to an evidentiary hearing in a postconviction action.

30. **Effectiveness of Counsel: Presumptions: Witnesses.** In cases where counsel completely fails to submit the State's case to meaningful adversarial testing, prejudice to the defendant will be presumed. But when the record shows that the State's witnesses were thoroughly cross-examined consistent with the defense theory, there was meaningful adversarial testing of the prosecution's case.

31. **Postconviction: Effectiveness of Counsel: Witnesses.** In assessing postconviction claims of ineffective assistance of counsel for failure to call a particular witness, an appellate court upholds the dismissal without an evidentiary hearing where the motion did not include specific allegations regarding the testimony which the witness would have given if called.

32. **Insanity: Proof.** The two requirements for the insanity defense are that (1) the defendant had a mental disease or defect at the time of the crime and (2) the defendant did not know or understand the nature and consequences of his or her actions or that he or she did not know the difference between right and wrong.

33. **Postconviction: Insanity: Proof.** Bald assertions of insanity, unsubstantiated by a recital of credible facts and unsupported by the record, are wholly insufficient and justify the summary dismissal of a postconviction proceeding.

34. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her constitutional rights, causing the judgment against the defendant to be void or voidable.

Appeal from the District Court for Box Butte County: TRAVIS P. O'GORMAN, Judge. Affirmed.

Dominick L. Dubray, pro se.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Wright, J.

## I. NATURE OF CASE

This is an appeal from the district court's denial of a petition for postconviction relief by appellant, Dominick L. Dubray. Dubray was convicted in 2012 of two counts of first degree murder and two counts of use of a weapon to commit a felony. The district court granted the State's motion to dismiss the postconviction petition without an evidentiary hearing. Dubray appeals from this dismissal. We conclude that either his claims are procedurally barred, his claims fail to allege sufficient facts to demonstrate a violation of his constitutional rights, or the record and files affirmatively show he is entitled to no relief. We affirm the judgment of the district court.

## II. FACTS

The facts of this case are set out in detail in our opinion from Dubray's direct appeal of his convictions.[1] Dubray lived with Catalina Chavez. Mike Loutzenhiser was Chavez' stepfather, and his son lived with Dubray and Chavez.

### 1. Murders of Chavez and Loutzenhiser

On February 10, 2012, in Alliance, Nebraska, Dubray, Chavez, and Loutzenhiser were drinking alcohol at a club and at another person's home from around 8 p.m. to 6 a.m. the next morning. Loutzenhiser, who lived in Scottsbluff, Nebraska, was visiting for the weekend. About 6 a.m., Dubray, Chavez,

---

[1] *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014).

and Loutzenhiser walked back to the house where Dubray and Chavez lived.

At 6:49 a.m., Dubray called his cousin Carlos Reza and told him that he had two dead bodies in the house and was going to kill himself. He said, "'I love you, Bro. Take care of my daughter.'" Reza immediately drove to Dubray's house and arrived minutes later.

Reza entered through the front door and saw Loutzenhiser's dead body in the living room, with a lot of blood underneath him. He found Dubray lying motionless on the floor in the bedroom. Reza began screaming for Dubray, who got up in response to Reza's yelling and went into the kitchen with him. Dubray stood with his hands on the kitchen table, crying and shaking his head. Dubray told Reza that Chavez was going to leave him. Dubray said, "'Look, Bro, I tried to kill myself and it didn't work. I don't want to go to prison.'" He showed Reza a stab wound to his chest and said, "'I tried to kill myself right here.'" Dubray grabbed a clean knife off of the kitchen counter and said, "'I'm going to kill myself.'" He came back to the kitchen table, where he and Reza sat down. Dubray set the kitchen knife down at his side.

About 5 to 10 minutes after Reza arrived, another cousin, Marco Dubray (Marco), came to the house. When Marco saw Loutzenhiser's body, he asked what happened. Dubray said, "'I don't know. I snapped. And I just [want to kill] myself,'" "'I can't believe what I have done,'" and "'I just want to die. I don't want to go to prison.'" Reza hugged Dubray. Dubray then said, "'Just go, Bro. Just go. Get the fuck out of here. Just go.'"

Reza and Marco left the house and called their uncle Lonnie Little Hoop for help, telling him that Dubray was trying to kill himself. While waiting outside for Little Hoop to arrive, Reza heard a loud scream coming from the bedroom that sounded as if it came from Dubray. Little Hoop arrived, went into the house with Reza, and found Dubray lying in the bedroom between the bed and the wall. Dubray had a knife sticking

out of his back. When Little Hoop called out to him, Dubray began moving and tried to pull himself up onto the bed. Little Hoop told him not to move and directed Reza to call for an ambulance. When Dubray tried to sit up, Little Hoop noticed Chavez' dead body beneath him. Dubray faced Little Hoop and said, "'I don't want to live anymore. I don't want to go to jail.'" Reza flagged down a nearby police cruiser. The police requested an ambulance and then went to the house.

When the police entered the home, they found Loutzenhiser's body with multiple stab wounds and no signs of life. One officer testified that Loutzenhiser's neck was nearly severed. The police then entered the bedroom and found Dubray and Chavez' body. Dubray still had a knife in his back. He was lying between the bedroom wall and the bed, on top of Chavez' body. Dubray began to move and moan and pulled the knife out of his back. He was then taken to a local hospital.

Police found three knives at the scene: one underneath Dubray and next to Chavez' body between the bed and bedroom wall, a second that was found on the bed, and a third that had been in Dubray's back. A knife block was located on the kitchen counter. There were four open slots in the knife block. The three knives recovered by police appeared to be kitchen knives that matched the knives remaining in the knife block.

Dubray was treated at the local hospital's trauma center and then transferred to a hospital in Denver, Colorado, for further care. Dubray had 17 lacerations or stab wounds. After being treated and examined, it was determined that only the stab wound to his chest was life threatening. Most of his wounds were superficial. When in the hospital in Colorado, Dubray told Reza that he had "fucked up."

## 2. Dubray's Trial and Convictions

Dubray was tried for two counts of first degree murder. He was also charged with two counts of use of a weapon to commit a felony. He did not testify at trial.

The forensic pathologist who performed the autopsies of the two victims testified that Loutzenhiser had 22 stab wounds. Several of the wounds in his chest were 7 to 9 inches deep, reaching his lungs. Several other stab wounds to Loutzenhiser were in his back. His spinal cord was cut. He also had a defensive wound on his left wrist. The blood flow patterns indicated that many of his wounds were inflicted when he was hunched over. Chavez had 19 stab wounds. Several stab wounds to her neck severed her trachea and esophagus and cut an artery in multiple places. She also had a defensive wound and bruising on her right hand. Other stab wounds were found in the back of her neck and her back. The bloodstains on her clothing indicated that most of her wounds were inflicted after she was on the ground.

The surgeon who treated Dubray testified that Dubray had a total of 17 wounds, most of which were superficial "'slash wound[s].'" Only three wounds were potentially life-threatening stab wounds: one in his abdomen and two in his chest. After further exploration by the surgeon, only one was determined to be life threatening: a stab wound to his chest.

Based upon the physical evidence of the number and force of the stab wounds, the State argued that the killings were premeditated and not in self-defense. The State also argued against the defense's theory of self-defense, because most of Dubray's wounds were superficial, which supported the State's theory that they were self-inflicted.

Dubray's defense was based on a theory of self-defense or manslaughter based upon a "sudden quarrel." Dubray's family members testified that he had bruising on his face when he was in the hospital. The defense claimed that Dubray's 17 stab wounds or lacerations showed that he must have acted in self-defense.

Dubray was convicted of both counts of first degree murder and both counts of use of a weapon to commit a felony. He was sentenced to two life sentences for the murder convictions and 30 to 40 years' imprisonment for each of the convictions for

use of a weapon to commit a felony, all to run consecutively. After his convictions, Dubray brought a direct appeal.

### 3. DUBRAY'S DIRECT APPEAL

Dubray's assignments of error on direct appeal were categorized by this court as trial court error, prosecutorial misconduct, and ineffective assistance of counsel.[2]

Dubray claimed ineffective assistance of counsel on the basis of several alleged errors of his trial counsel. All of these claims but one were rejected, and the convictions were affirmed.

We concluded that Dubray's claim that he was prejudiced because his trial counsel failed to call Megan Reza (Megan) as a witness could not be decided on direct appeal. Dubray contended that Megan would have testified that Chavez kept a knife hidden under her mattress for her protection. Dubray claimed this testimony would have helped to negate the premeditation charge and would have supported his theory of self-defense or sudden quarrel. We declined to address the issue on direct appeal. We affirmed Dubray's convictions and sentences.

### 4. POSTCONVICTION ACTION

Dubray filed a timely petition for postconviction relief. He alleged various claims of actual innocence, ineffective assistance of trial counsel, ineffective assistance of appellate counsel, trial court error, and prosecutorial misconduct.

The State moved to dismiss Dubray's petition without an evidentiary hearing, on the bases that the petition failed to allege sufficient facts which would constitute a constitutional violation of his rights, that the claims were procedurally barred, that the case file and record affirmatively showed that Dubray was not entitled to relief, and/or that the petition alleged only conclusions of fact or law. The district court sustained the State's motion.

---

[2] See *id.*

## III. ASSIGNMENTS OF ERROR

Dubray asserts that the district court erred when it dismissed his petition for postconviction relief without an evidentiary hearing. More specifically, he asserts that the court erred in dismissing without an evidentiary hearing his claims of (1) actual innocence, (2) ineffective assistance of trial counsel, (3) ineffective assistance of appellate counsel, (4) error by the trial court, and (5) prosecutorial misconduct.

## IV. STANDARD OF REVIEW

[1,2] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[3] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law, which an appellate court reviews de novo.[4]

[3-5] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.[5] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error, while the determination of whether counsel's performance was deficient and whether the defendant suffered prejudice as a result under the *Strickland v. Washington*[6] test is reviewed de novo.[7] When a postconviction petition alleging ineffective assistance of counsel is dismissed on the pleadings without an evidentiary hearing, there are no factual findings

---

[3] *State v. Nolan*, 292 Neb. 118, 870 N.W.2d 806 (2015).

[4] See *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002).

[5] *State v. DeJong*, 292 Neb. 305, 872 N.W.2d 275 (2015).

[6] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[7] See *State v. DeJong, supra* note 5.

of the lower court, and thus we review the entirety of the district court's dismissal de novo.[8]

## V. ANALYSIS

[6] Dubray claims that the district court erred by dismissing his petition for postconviction relief without an evidentiary hearing. Under the Nebraska Postconviction Act,[9] a prisoner in custody may file a petition for relief on the grounds that there was a denial or infringement of the prisoner's constitutional rights that would render the judgment void or voidable.[10] This category of relief is "very narrow."[11]

[7-9] Under § 29-3001(2), the prisoner is entitled to an evidentiary hearing on the claim, unless "the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief." In order to be entitled to an evidentiary hearing, a prisoner must allege facts in the petition for postconviction relief that, if proved, would constitute a violation of his or her rights under the U.S. or Nebraska Constitution.[12] A prisoner is not entitled to an evidentiary hearing on the basis of claims that present only conclusory statements of law or fact.[13]

### 1. Dubray's Claim of
### Actual Innocence

[10,11] A claim of actual innocence may be a sufficient allegation of a constitutional violation under the Nebraska Postconviction Act.[14] The essence of a claim of actual

---

[8] See *State v. Dragon*, 287 Neb. 519, 843 N.W.2d 618 (2014).

[9] Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2008 & Cum. Supp. 2014).

[10] § 29-3001(1).

[11] *State v. Harris*, 274 Neb. 40, 45, 735 N.W.2d 774, 779 (2007).

[12] See *State v. Phelps*, 286 Neb. 89, 834 N.W.2d 786 (2013).

[13] See, *State v. Abdulkadir*, 293 Neb. 560, 878 N.W.2d 390 (2016); *State v. Banks*, 289 Neb. 600, 856 N.W.2d 305 (2014).

[14] See *State v. Phelps, supra* note 12.

innocence is that the State's continued incarceration of such a
petitioner without an opportunity to present newly discovered
evidence is a denial of procedural or substantive due process.[15]
The threshold to entitle a prisoner to an evidentiary hearing on
such a postconviction claim is "'extraordinarily high.'"[16] Such
a petitioner must make a strong demonstration of actual inno-
cence because after a fair trial and conviction, the presumption
of innocence vanishes.[17]

[12] Dubray has not met the extraordinarily high standard.
He presents no new facts that would support his claim of
actual innocence. He contends that the evidence at trial was
not sufficient, stating that "it is at the most self-defense." He
asserts that "[t]he only reason he was charge[d] is he was the
one that lived." To the extent that the allegations in Dubray's
petition are based on the insufficiency of the evidence at trial,
they are procedurally barred. Claims of insufficiency of evi-
dence that were or could have been raised on direct appeal
are procedurally barred from being raised in a postconviction
action.[18] Merely attempting to relitigate issues decided at trial
and affirmed on appeal does not make a viable claim of actual
innocence. Because Dubray could have asserted a claim of
insufficiency of the evidence on direct appeal, he is procedur-
ally barred from doing so now, even if the claim is labeled as
one of "actual innocence."

The only allegation made by Dubray that even approaches
an allegation of new facts in support of actual innocence is
that he "woke up and [saw] 2 individuals dead, [and] had no
clue [] what took place." But a lack of memory does nothing
to show that he did not murder the two victims. He just did
not remember doing so. On his direct appeal, we found that

---

[15] *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

[16] *State v. Phelps, supra* note 12, 286 Neb. at 94, 834 N.W.2d at 791-92.

[17] *State v. Phelps, supra* note 12.

[18] *State v. Nesbitt, supra* note 4.

the evidence against him at trial was strong.[19] Instead of making a strong demonstration of actual innocence, Dubray has made none.

## 2. Dubray's Claims of Error
## by Trial Judge

[13,14] Dubray raises several claims of error by the trial judge. It is well established that a petition for postconviction relief may not be used to obtain review of issues that were or could have been reviewed on direct appeal.[20] Any attempts to raise issues at the postconviction stage that were or could have been raised on direct appeal are procedurally barred.[21] The district court concluded that these claims were procedurally barred because Dubray could have raised them in his direct appeal. We agree. All of his claims of trial error are procedurally barred.

## 3. Dubray's Claims of
## Prosecutorial Misconduct

Dubray's claims of prosecutorial misconduct are also procedurally barred. Dubray alleges numerous instances of prosecutorial misconduct. However, Dubray had the opportunity to raise these issues on his direct appeal and did in fact raise several claims of prosecutorial misconduct.[22] Dubray is procedurally barred from raising additional claims of prosecutorial misconduct at this postconviction stage.

## 4. Dubray's Claims of Ineffective
## Assistance of Trial Counsel

[15-18] The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his

---

[19] See *State v. Dubray, supra* note 1.

[20] *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

[21] See *id.*

[22] See *State v. Dubray, supra* note 1.

defen[s]e." The right to counsel has been interpreted to include the right to *effective* counsel.[23] Under the standard established by the U.S. Supreme Court in *Strickland v. Washington*, claims of ineffective assistance of counsel by criminal defendants are evaluated using a two-prong analysis: first, whether counsel's performance was deficient and, second, whether the deficient performance was of such a serious nature so as to deprive the defendant of a fair trial.[24] A court may address the two elements of this test, deficient performance and prejudice, in either order.[25]

[19,20] To show that the performance of a prisoner's counsel was deficient, it must be shown that "counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area."[26] To establish the prejudice element of the *Strickland v. Washington* test, a defendant must show that the counsel's deficient performance was of such gravity to "render[] the result of the trial unreliable or the proceeding fundamentally unfair."[27] This prejudice is shown by establishing that *but for* the deficient performance of counsel, there is a "reasonable probability" that the outcome of the case would have been different.[28]

### (a) Trial Counsel's Failure to Call Megan as Witness

Dubray's postconviction petition claims that his trial counsel was ineffective:

> Trial counsel was ineffective for failing to present the fact from Megan . . . that she knew and [Chavez, the

---

[23] *Strickland v. Washington, supra* note 6.

[24] *Id.* See, also, *State v. Nolan, supra* note 3.

[25] *State v. Nolan, supra* note 3.

[26] *State v. Lopez*, 274 Neb. 756, 760-61, 743 N.W.2d 351, 356 (2008).

[27] *State v. Dragon, supra* note 8, 287 Neb. at 524, 843 N.W.2d at 624. Accord *State v. Robinson*, 285 Neb. 394, 827 N.W.2d 292 (2013).

[28] *State v. Nolan, supra* note 3, 292 Neb. at 130, 870 N.W.2d at 819.

victim] showed her a kitchen knife that she kept hidden between the mattresses in the bedroom for protection. Megan was subpoenaed as a witness . . . but never testified regarding these matter[s]. Trial counsel knew about this but, never introduced it []as evidence, this prejudiced Dubray from presenting a defense, and for the attorney failing to present this fact is ineffective assistance of counsel.

The district court concluded that Dubray was not entitled to an evidentiary hearing on this claim. Dubray's petition does not establish how Megan's testimony regarding the knife would have helped his defense. Defense theories at trial were that Dubray acted in self-defense or that the killings resulted from a sudden quarrel without premeditation. We conclude that there is not a reasonable probability that Megan's testimony would have made a difference in the outcome of the case. There was no evidence offered at trial or at postconviction that Chavez actually used a knife when she was killed. The probative value of whether the victim kept a knife under her bed for protection is minimal.

On direct appeal, we found that the "evidence against Dubray was strong" and that "[t]he most damning evidence of Dubray's guilt was his own statements to witnesses who had no reason to lie about them."[29] Dubray made numerous incriminating statements. He indicated his motive: that Chavez was going to leave him. He showed a guilty conscience—expecting to go to prison and trying to kill himself to avoid this. He said, "I can't believe what I have done."

Beyond Dubray's own words, the physical evidence at trial was very strong. The two victims were stabbed numerous times with great force. Dubray suffered numerous superficial wounds. His only life-threatening wound—the stab wound to his chest—was one that he admitted to inflicting upon himself. The severity of the victims' wounds and the superficial nature

---

[29] *State v. Dubray, supra* note 1, 289 Neb. at 228-29, 854 N.W.2d at 605.

of most of Dubray's wounds strongly supported that he was the aggressor and that his injuries were self-inflicted.

In light of the record, we conclude that the failure of Dubray's trial counsel to call Megan as a witness did not prejudice him, because such testimony could not have made a difference in the outcome of the trial. Because there was no prejudice here, this claim of ineffective assistance of trial counsel is without merit.

### (b) Other Ineffective Assistance
### of Trial Counsel Claims

Dubray raises various other claims of ineffective assistance of trial counsel. These claims include the failure to properly question prospective jurors in the voir dire, failure to call a DNA expert witness, and failure to pursue an insanity defense, among others.

[21] When, as is the case here, a defendant's trial counsel is different from his or her appellate counsel, all issues of ineffective assistance of trial counsel that are known to the defendant or are apparent from the record must be raised on direct appeal.[30] If the issues are not raised, they are procedurally barred.[31] Because Dubray could have raised all of his various claims of ineffective assistance of trial counsel on direct appeal, they are now procedurally barred.

### 5. DUBRAY'S CLAIMS OF INEFFECTIVE
### ASSISTANCE OF APPELLATE COUNSEL

[22] Dubray also raises various claims of ineffective assistance of appellate counsel. Claims of ineffective assistance of appellate counsel may be raised for the first time on postconviction review.[32]

[23,24] When analyzing a claim of ineffective assistance of appellate counsel, courts will often begin by determining

---

[30] *State v. Ramirez*, 284 Neb. 697, 823 N.W.2d 193 (2012).

[31] *Id.*

[32] *State v. Sellers, supra* note 20.

whether the defendant suffered prejudice by appellate counsel's failure to raise a claim.[33] If the claimed deficiency of appellate counsel's performance is the failure to raise a claim on appeal, the court will look at the strength of the claim that appellate counsel failed to raise.[34] Much like claims of ineffective assistance of trial counsel, the defendant must show that *but for* counsel's failure to raise the claim, there is a "reasonable probability" that the outcome would have been different.[35] The prejudice must be of such severity that it "renders the result of the trial unreliable or the proceeding fundamentally unfair."[36]

[25] When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a "layered" claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland v. Washington* test.[37] If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.[38]

Dubray raises 18 individual claims of ineffective assistance of appellate counsel, many of which are related or overlapping. We summarize and address these below.

### (a) Motion for Rehearing

Dubray's petition claims that his appellate counsel was ineffective by failing to file a motion for rehearing in his direct appeal. As the district court correctly noted, Dubray's counsel did file a motion for rehearing. This claim is contradicted by the record of his direct appeal and is without merit.

---

[33] *Id.*

[34] *Id.*

[35] See *id.*

[36] *State v. Edwards, supra* note 15, 284 Neb. at 393, 821 N.W.2d at 693.

[37] *State v. Sellers, supra* note 20, 290 Neb. at 25, 858 N.W.2d at 585.

[38] *Id.*

### (b) Actual Innocence

Dubray asserts that his appellate counsel was ineffective for "failing to appeal the actual innocence claim of the first degree murder charges." We have discussed Dubray's claim of actual innocence made in this postconviction action and determined it to be without merit. Appellate counsel was not ineffective for not raising the issue on direct appeal.

### (c) Sufficiency of Evidence

[26] Dubray claims that his appellate counsel was ineffective for failing to raise a claim of insufficiency of evidence on direct appeal. In reviewing a claim of insufficiency of the evidence, an appellate court simply asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[39]

While Dubray's counsel did not challenge his convictions on the basis of insufficiency of evidence, this court necessarily considered the sufficiency of the evidence when evaluating his many claims on direct appeal. As we said in our opinion, "the State correctly argues that evidence against Dubray was strong and that the credibility of witnesses was not at issue. The most damning evidence of Dubray's guilt was his own statements to witnesses who had no reason to lie about them."[40] As opposed to being so insufficient that no rational trier of fact could have found him guilty, the evidence in this case was strong. Dubray's appellate counsel was not ineffective for failing to raise a meritless challenge to the sufficiency of the evidence.

### (d) Competency

[27] Dubray also asserts that his appellate counsel was ineffective for failing to raise the issues of whether the trial court erred in not conducting a competency hearing and

---

[39] See *State v. Samayoa*, 292 Neb. 334, 873 N.W.2d 449 (2015).

[40] *State v. Dubray, supra* note 1, 289 Neb. at 228-29, 854 N.W.2d at 605.

whether trial counsel was ineffective for not requesting one. A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.[41]

[28] In order to demonstrate prejudice from counsel's failure to investigate competency and for failure to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was actually incompetent and that the trial court would have found the defendant incompetent had a competency hearing been conducted.[42] Dubray's petition merely asserts that he was not provided with a competency hearing and that he was "tried while incompetent." His statement that he was tried while incompetent is a conclusory assertion of law. He alleges no facts that would show that he was, in fact, incompetent to stand trial. The district court was correct in concluding that these allegations were insufficient and that Dubray was not entitled to an evidentiary hearing on them.

### (e) Motions for Mistrial, Directed Verdict, and New Trial

[29] Dubray raises a layered claim of ineffective assistance of counsel based on the failure of his trial counsel to file motions for a mistrial, for a directed verdict, and for a new trial. The petition does not set forth any basis upon which these motions would be granted other than the conclusory statement that "the judge erroneously instructed [the] jury." Mere conclusions of fact or law are not sufficient to entitle a petitioner to an evidentiary hearing in a postconviction action.[43] Dubray has not made sufficient allegations to show

[41] *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016).

[42] *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011).

[43] See *State v. Abdulkadir, supra* note 13.

that he was prejudiced by the failure to raise these motions because he has not alleged any basis upon which the motions could be granted.

### (f) Suppression of Evidence

Dubray presents another layered ineffective assistance claim based on his trial counsel's failure to move to suppress the three knives introduced at trial and failure to preserve the issue for direct appeal. As the district court correctly noted, Dubray's motion failed to "allege[] any basis in law or fact which would support suppression of the evidence." Because Dubray has not alleged any basis for the suppression of this evidence, he has not made a viable claim of ineffective assistance of counsel for not raising the issue.

### (g) Juror Bias

Dubray brings another layered claim on the allegation that his trial counsel failed to strike "pro-prosecution jurors" and that his appellate counsel failed to raise the issue that his "conviction was unconstitutional because biased jurors deprived [him] of the right to a fair and impartial trial." Beyond his conclusory allegations about biased jurors, Dubray makes only one factual allegation, which is that one juror "was in fact a federal security officer." Employment as a security officer alone does not raise even an inference of bias. The district court correctly rejected this claim.

### (h) Meaningful Adversarial Testing

[30] Dubray presents a layered claim of ineffective counsel based on the claim that his trial counsel did not put the prosecution's case to "meaningful adversarial testing." In cases where counsel completely fails to submit the State's case to meaningful adversarial testing, prejudice to the defendant will be presumed.[44] But when the record shows that the State's witnesses were thoroughly cross-examined consistent with the

---

[44] *State v. Davlin*, 265 Neb. 386, 658 N.W.2d 1 (2003).

defense theory, there was meaningful adversarial testing of the prosecution's case.[45]

Dubray specifically claims that his trial counsel failed to cross-examine many of the State's witnesses and failed to object to any evidence. But his allegations are directly refuted by the record of his trial. Dubray's trial counsel conducted cross-examinations of most of the prosecution's witnesses in a thorough manner and consistent with the defenses of self-defense or sudden quarrel. His counsel further objected to several pieces of evidence, including through a pretrial motion in limine. The prosecution's case was put to meaningful adversarial testing. Because there was meaningful adversarial testing, the district court was correct to reject this claim.

### (i) Failure to Call Expert or Character Witnesses

Dubray asserts another layered claim based on his trial counsel's failure to call any expert witnesses or character witnesses. However, he fails to make any allegations as to what any of these witnesses would have testified.

[31] In assessing postconviction claims of ineffective assistance of counsel for failure to call a particular witness, we have upheld the dismissal without an evidentiary hearing where the motion did not include specific allegations regarding the testimony which the witness would have given if called.[46] Dubray has given us no indication as to what testimony such witnesses would have given or what exculpatory evidence may have been uncovered by the retention of experts. Dubray's allegations are insufficient to show a reasonable probability that the outcome would have been different but for the failure to call expert or character witnesses.

---

[45] *State v. Quezada*, 20 Neb. App. 836, 834 N.W.2d 258 (2013).

[46] *State v. Marks*, 286 Neb. 166, 835 N.W.2d 656 (2013); *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010).

### (j) Insanity Defense

Dubray asserts a layered claim based on trial counsel's failure to investigate and assert an insanity defense. The district court rejected these claims, stating that "[t]here is no allegation that would suggest [Dubray] had any basis for an insanity defense."

[32] Nebraska follows the *M'Naghten* rule as to the defense of insanity.[47] The two requirements for the insanity defense are that (1) the defendant had a mental disease or defect at the time of the crime and (2) the defendant did not know or understand the nature and consequences of his or her actions or that he or she did not know the difference between right and wrong.[48]

[33] As we have said, "bald assertions of insanity, unsubstantiated by a recital of credible facts and unsupported by the record, are wholly insufficient and justify the summary dismissal of a post conviction proceeding."[49] On their own, Dubray's assertions are conclusory and fail to allege any facts that would tend to show insanity. Moreover, the record shows that these claims of insanity are without merit. As this court said when discussing the issue of intoxication in Dubray's direct appeal:

> [T]he evidence shows that Dubray was not wholly deprived of reason immediately before or after the murders. As explained, Dubray, Chavez, and Loutzenhiser walked back to Dubray's house around 6 a.m. No witness testified that Dubray was behaving unreasonably at his aunt's house at this time. By 6:49 a.m., Dubray had killed Chavez and Loutzenhiser and called Reza to take care of his child. By the time Reza arrived a few minutes later, Dubray had also attempted suicide for the first time. But his concern for his daughter and his conduct

[47] *State v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009).

[48] *State v. Hotz*, 281 Neb. 260, 795 N.W.2d 645 (2011).

[49] *State v. Flye*, 201 Neb. 115, 119, 266 N.W.2d 237, 240 (1978).

after the murders showed he was contemplating how to respond to his imminent arrest. He specifically told Marco and Reza that he intended to kill himself to avoid prison, and he insisted that they not call Little Hoop so that he could carry out this plan. He was clearly reasoning and anticipating the consequences of the acts he had just committed.[50]

The record belies Dubray's conclusory claims of insanity. Because these claims are without merit, Dubray did not suffer prejudice by his trial counsel's failure to raise the issue.

### (k) Other Claims

[34] Dubray asserts several other miscellaneous claims of ineffective assistance of appellate counsel that are too vague to understand what error is being alleged. For example, he alleges that his appellate counsel was ineffective for "failing to raise a dead-bang winner." In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her constitutional rights, causing the judgment against the defendant to be void or voidable.[51] The vague claims in Dubray's petition do not sufficiently allege any facts that, if true, would constitute ineffective assistance of counsel or any other constitutional violation.[52]

### VI. CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED.

---

[50] *State v. Dubray, supra* note 1, 289 Neb. at 240, 854 N.W.2d at 612.

[51] § 29-3001(1); *State v. Phelps, supra* note 12.

[52] See *State v. Phelps, supra* note 12.