IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CLARK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

PAUL A. CLARK, APPELLANT.

Filed March 28, 2023.    No. A-22-219.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Paul A. Clark, pro se.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Paul A. Clark appeals from the district court for Lancaster County, which denied Clark's motion for postconviction relief without an evidentiary hearing. For the reasons that follow, we affirm.

## BACKGROUND

In April 2018, the State filed an information charging Clark with second degree murder, kidnapping, first degree assault, second degree assault, and two counts of use of a firearm to commit a felony. In August 2018, pursuant to a negotiated plea agreement, the State filed an amended information charging Clark with first degree assault (count 1) and use of a deadly weapon to commit a felony (count 2). The State further agreed to dismiss a felony murder charge that had been filed separately. Clark pled no contest to the two charges in the amended information, and he

was sentenced to consecutive sentences of 40 to 50 years of imprisonment on count 1 and 20 to 30 years of imprisonment on count 2. The State provided the following factual basis in support of Clark's plea:

On July 10th of 2017, Lincoln police officers were in contact with Antonio Madlock, who reported that his brother Phillip Madlock was missing. Antonio Madlock told the officers that he had not heard from Phillip for two weeks, which was unusual. Additional family members also reported having no contact with Phillip Madlock during that time.

A Victoriya Derun, the mother of Phillip Madlock's child, told officers the last time she spoke with Phillip Madlock was June 28, 2017.

Through the courts [sic] of the investigation a number of people provided information regarding the case. Tim Montgomery advised Lincoln police department investigators that Phillip Madlock had contacted him, asking for some help in finding marijuana. Montgomery made some calls, eventually contacting Paul Clark to see if he had any marijuana available. Paul Clark indicated he could help out Montgomery with some weed.

On June 28th, 2017 Phillip Madlock came to Montgomery's home . . . in Lincoln, Lancaster County, Nebraska, so that he could get the marijuana. Paul Clark arrived there along with Dominic Aguirre, whom Mr. Montgomery did not know and had not invited over.

When Mr. Montgomery started to introduce Paul Clark to Phillip Madlock, Paul Clark immediately began confronting Madlock about money he said Phillip Madlock owed to him.

Montgomery said that Paul Clark continued to ask Madlock, "Where's my money," and the two engaged in a heated argument. Soon Dominic Aguirre joined in, arguing about money that Madlock owed to him and Mr. Clark.

According to Montgomery, the arguing became more intense between Madlock, Clark and Aguirre until Dominic Aguirre punched Phillip Madlock in the face with his fist, busting Madlock's lip open.

Aguirre then began punching Madlock several times until Tim Montgomery pushed him away and into the kitchen furniture. Dominic Aguirre then produced a handgun and threatened Montgomery for interfering. Tim Montgomery jumped behind Paul Clark and implored him to stop Dominic Aguirre and for them both to leave his home.

Phillip Madlock joined in, begging Clark to stop Aguirre and to leave the house. Instead Paul Clark continued to demand Phillip Madlock give them their money.

Dominic Aguirre also continued to demand money from Phillip Madlock and then hit Madlock in the head with the handgun, opening a cut over Phillip Madlock's eye and sending him off-balance. Mr. Aguirre continued to hit Madlock with the handgun. He began bleeding even more profusely.

At this point Tim Montgomery noticed Paul Clark also had a handgun. Paul Clark also punched Phillip Madlock, knocking him against Montgomery, who continued to ask Paul Clark to take Dominic Aguirre and leave his home.

Paul Clark responded they were not going anywhere until they got their money. Tim Montgomery continued to ask Clark and Aguirre to leave, concerned that his children and wife were coming home.

Phillip Madlock moved into the attached garage followed by Aguirre, who again struck Madlock with the gun, knocking him to the ground. Montgomery believed Phillip Madlock was suffering injuries so severe that he needed to be transported to the hospital.

Montgomery continued to ask Paul Clark to leave with Aguirre, complaining about the blood and disruption to his house. Paul Clark indicated he would get it cleaned up. He talked on the phone, after which Merrie Whitaker and Anthony Brock arrived.

Merrie Whitaker told investigators that she arrived at [the residence] on June 28th after being called by Paul Clark, who said he had a house he wanted her to clean. Ms. Whitaker said she had done cleaning jobs on other houses that Paul Clark had remodeled and sold.

So she went to the [residence], expecting the same type of situation. When she arrived she saw Dominic Aguirre outside the residence. She went inside where from the kitchen she saw a man lying on his back on the floor of the garage, moaning. She also overheard Paul Clark talking with another male who was telling Clark, "I think you broke his jaw."

Anthony Brock stated that he received a Snapchat of a man getting beat up. After receiving a similar Snapchat in which he recognized Dominic Aguirre, Brock received directions to the [residence].

When he arrived, he saw a bloody Phillip Madlock lying on the floor of the garage on a sheet, mumbling incoherently.

Anthony Brock said it was apparent that Phillip Madlock needed serious medical attention. Instead Brock said Phillip Madlock was carried out of the garage and placed into the back seat of Madlock's Chevy Avalanche.

Dominic Aguirre drove away in the Avalanche, followed by Paul Clark driving his vehicle, and Brock followed Clark. The three stopped at a business off Cornhusker Highway in Lincoln. Clark and Brock went into the business, and when they came back out, Mr. Brock saw Madlock's Avalanche moving back and forth. Brock approached the driver's side and Dominic Aguirre told him he had to choke out Madlock.

When it was discovered that Phillip Madlock was dead, the body was transported outside Lancaster County, where it was disposed of.

All this occurring in Lancaster County, except for the disposal, Nebraska.

Immediately after the factual basis was read into the record, defense counsel submitted without objection and Clark affirmatively agreed that the factual basis was sufficient to support his no contest plea.

Clark filed a direct appeal to this court, alleging excessive sentences and ineffective assistance of trial counsel. This court affirmed Clark's sentences and rejected his ineffective assistance of counsel claims on the grounds they were not specifically assigned and argued in Clark's brief on appeal. See *State v. Clark*, No. A-18-1040, 2019 WL 5576315 (Neb. App. Oct. 29, 2019) (not designated for permanent publication). The mandate on Clark's direct appeal was

issued on December 3, 2019. Thereafter, on December 1, 2020, Clark filed a verified motion for postconviction relief in the district court.

Clark's motion for postconviction relief alleged generally that appellate counsel was ineffective for failing to specifically assign and argue his ineffective assistance of trial counsel claims on direct appeal. As to the merits of those claims, Clark alleged that trial counsel failed to advise Clark that he had viable defenses to each of the charges in the original information. As such, Clark alleged that "[h]ad trial counsel properly advised [Clark] of valid legal defenses, [he] would have insisted on going to trial rather than entering pleas of no contest." Clark further alleged that appellate counsel was ineffective for failing to properly argue Clark's excessive sentence claim.

On May 10, 2021, Clark filed a motion for leave to supplement his motion for postconviction relief to add an additional claim challenging the factual basis upon which the district court accepted Clark's no contest plea. On March 9, 2022, the district court entered an order overruling Clark's motion for postconviction relief without an evidentiary hearing and overruling Clark's motion for leave to supplement the additional claim. In addition to the factual basis provided in support of Clark's plea, the court also noted information in the presentence investigation report (PSR) that the gun used in the assault was owned and provided by Clark and that Clark and Aguirre discussed putting Madlock in the truck and leaving the scene. Moreover, the court noted Clark's own statement in the PSR that he stopped at the business on Cornhusker Highway to retrieve in-transit tags for Madlock's truck.

With regard to Clark's layered claims that trial counsel was ineffective for failing to advise him of defenses and appellate counsel was ineffective for failing to properly raise those issues on direct appeal, the court concluded that the claims were affirmatively refuted by the record and that Clark could not show prejudice. The court observed that the "essence of [Clark's] request for relief is his assertion that he had no role in Madlock's assault, kidnapping, and murder. . . . However, the record clearly establishes that he was an active participant in the crimes against Madlock." As such, the court concluded that the record "plainly refutes" each of Clark's allegations as to purported defenses and the related claims of ineffective assistance of trial and appellate counsel.

With respect to prejudice, the court observed that "[t]he record in this case demonstrates that the State had a strong and viable case against [Clark] on each of the six counts alleged in the original information" as well as the offense of felony murder which was charged separately and dismissed as a result of the plea agreement. Thus, the court concluded that Clark failed to establish prejudice, as there was no reasonable probability that Clark would have insisted on going to trial on the original charges. The court similarly concluded that Clark failed to establish prejudice with respect to his final claim that appellate counsel was ineffective for failing to properly argue his excessive sentence claim on direct appeal.

Altogether, the district court concluded that "[b]ecause [Clark] failed to make any factual allegations that would render the judgment void of [sic] voidable, all of the claims in [Clark's] Verified Motion for Postconviction Relief are affirmatively refuted by the record, and further, [Clark] cannot establish that he was prejudiced by counsel's performance." Accordingly, the court overruled and dismissed Clark's motion without an evidentiary hearing. With regard to Clark's motion to supplement the additional claim challenging the factual basis, the court concluded that the claim was untimely and procedurally barred, as Clark sought to add the entirely new claim well after the 1-year statutory limitation. In the alternative, the court observed that Clark's additional

claim would have failed on the merits anyway, as the record affirmatively established that the factual basis was sufficient to support Clark's no contest plea and counsel could not have been ineffective for failing to argue otherwise. Clark appealed.

## ASSIGNMENTS OF ERROR

Clark assigns, restated and consolidated, that the district court erred in (1) overruling and dismissing Clark's motion for postconviction relief without an evidentiary hearing, (2) failing to adjudicate Clark's claim that appellate counsel was ineffective for failing to specifically assign and argue Clark's ineffective assistance of trial counsel claims on direct appeal, (3) considering information contained in the PSR, (4) denying Clark's motion for appointment of counsel, and (5) overruling Clark's motion for leave to supplement his motion for postconviction relief. Clark further alleges, for the first time on appeal, that the district court committed plain error in accepting Clark's no contest plea in the underlying criminal prosecution, and raises related claims of ineffective assistance of trial, appellate, and postconviction counsel.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022).

## ANALYSIS

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *Id.* Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Id.* An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *Id.* The appellate court does not conduct this review sua sponte, however; as with all appeals, the alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by the appellate court. *Id.* The appellate court will not scour the record on appeal to understand unclear arguments or find support for broad conclusions. *Id.*

Clark first assigns that the district court erred in overruling his motion for postconviction relief without an evidentiary hearing. Clark argues that he had viable defenses to each of the charges in the original information against him and his trial counsel was ineffective for failing to

advise him of those defenses. However, we agree with the district court that the record affirmatively refutes each of Clark's claims. The alleged defenses that Clark believes he had would have failed, such that trial counsel could not have been ineffective for failing to advise Clark on those defenses and appellate counsel could not have been ineffective for failing to properly raise the ineffective assistance of trial counsel claims on direct appeal. See *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016) (if trial counsel was not ineffective, then defendant was not prejudiced by appellate counsel's failure to raise issue).

As it was in the district court, the essence of Clark's argument on appeal is that he "played no role in, and had no knowledge of the actions Aguirre took which ultimately led to Madlock's kidnapping." Brief for appellant at 28. Clark then relies on his alleged lack of participation to support defenses that trial counsel allegedly failed to consider. However, we agree with the district court that the record clearly demonstrates that Clark was an active participant in the crimes against Madlock.

Under Neb. Rev. Stat. § 28-206 (Reissue 2016), a person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender. The statute does not define aiding and abetting as a separate crime, but, rather, aiding and abetting is simply another basis for holding one liable for the underlying crime. See *State v. Kitt*, 284 Neb. 611, 823 N.W.2d 175 (2012). One who intentionally aids and abets the commission of a crime may be responsible not only for the intended crime, if it is in fact committed, but also for other crimes which are committed as a natural and probable consequence of the intended criminal act. See *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020).

Aiding and abetting requires some participation in a criminal act and must be evidenced by some word, act, or deed. *Id.* No particular acts are necessary, nor is it necessary that the defendant take physical part in the commission of the crime or that there was an express agreement to commit the crime. *Id.* While presence, acquiescence, or silence alone are not enough, mere encouragement or assistance is sufficient. See *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019).

Based on the record in this case, there is no doubt that Clark aided and abetted each of the crimes charged in both the original and amended informations. The factual basis clearly establishes that Madlock was violently assaulted with a deadly weapon, kidnapped, and ultimately murdered, and Clark was intimately involved throughout the entire affair. Clark arranged for the meeting, initially confronted Madlock about a debt, and then stood by as Aguirre beat Madlock until he was nearly unconscious and in need of serious medical attention. Thereafter, some combination of efforts from Clark, Aguirre, and Brock caused Madlock to be loaded into the back seat of his own vehicle where he was driven away and eventually killed by Aguirre. All of this was established by the factual basis provided in support of Clark's plea, to which Clark did not object. Even without the additional information as to Clark's involvement contained in the PSR, the factual basis alone demonstrates encouragement and assistance enough to establish that Clark aided and abetted each of the crimes committed against Madlock.

Because the alleged defenses that Clark believes he had would have plainly failed in this case, there is no merit to Clark's claims that trial counsel was ineffective for failing to advise Clark on those defenses. See *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018) (as matter of law, counsel cannot be ineffective for failing to raise meritless argument). Accordingly, we agree with the district court that Clark's underlying ineffective assistance of trial counsel claims were

affirmatively refuted by the record, and appellate counsel could not have been ineffective for failing to properly raise those claims on direct appeal. Thus, we reject this assignment of error and affirm the district court's denial of postconviction relief without an evidentiary hearing.

Clark next assigns that the district court "failed to adjudicate" his claim that appellate counsel was ineffective for failing to specifically assign and argue Clark's ineffective assistance of trial counsel claims on direct appeal. In argument on this assignment of error, Clark asserts that the district court erred because it "failed to determine this allegation and make findings of fact and conclusions of law with respect thereto." Brief for appellant at 11. We disagree.

When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a "layered" claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) test. *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id.*

In this case, the district court specifically found that each of Clark's ineffective assistance of trial counsel claims were affirmatively refuted by the record. Having failed to establish trial counsel's ineffectiveness, as a matter of law, Clark was not prejudiced by appellate counsel's failure to raise those issues on direct appeal. Thus, contrary to Clark's assertion, the court did make findings of fact and conclusions of law with respect to Clark's claim that appellate counsel was ineffective for failing to properly raise his ineffective assistance of trial counsel claims on direct appeal, and this assignment of error is without merit.

Clark next assigns that the district court erred in considering information contained in the PSR. We note that Clark does not provide a distinct argument section for this assignment of error. Rather, Clark's argument regarding the court's consideration of information contained in the PSR is embedded throughout the argument on other assignments of error. Accordingly, Clark failed to both specifically assign and specifically argue this assignment of error and we will not address it. See *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

Clark next assigns that the district court erred in denying his motion for appointment of counsel to prosecute the present appeal. On June 30, 2022, Clark filed a motion for appointment of counsel in the district court. The district court promptly denied that motion on July 1, on the grounds that the errors assigned in Clark's motion for postconviction relief were procedurally barred and without merit, establishing that the action presents no justiciable issue of law or fact.

Under the Nebraska Postconviction Act, it is within the discretion of the trial court as to whether counsel shall be appointed to represent the defendant. *State v. Taylor*, 300 Neb. 629, 915 N.W.2d 568 (2018). Where the assigned errors in the postconviction petition before the district court are either procedurally barred or without merit, thus establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint appellate counsel for an indigent defendant. *Id.*

On appeal, Clark argues that "contrary to the district court decision [sic] that 'no justiciable issue of law or fact' was presented, the record remains silent as to the reason(s) why trial counsel failed to advise Clark on the many defenses he had against the States charges." Brief for appellant

at 35. Assuming trial counsel failed to advise Clark as he alleges, then it is true that the record is silent as to why counsel failed to do so. However, as discussed above, the record also affirmatively establishes that those defenses would have failed. Trial counsel could not have been ineffective for failing to advise Clark on meritless defenses, and appellate counsel could not have been ineffective for failing to properly raise meritless ineffective assistance of trial counsel claims. Thus, we agree with the district court that Clark's postconviction proceedings contained no justiciable issues of law or fact, and it was not an abuse of discretion for the district court to deny Clark's motion for appointed counsel.

Clark next assigns that the district court erred in denying Clark's motion for leave to supplement his motion for postconviction relief. On May 10, 2021, Clark filed a motion for leave to supplement his motion for postconviction relief to include claims that the factual basis in support of his no contest plea was insufficient and that trial counsel was ineffective for failing to object thereto. In its March 9, 2022, order, the district court found that Clark was seeking to raise "distinctly new claims" well beyond the 1-year statutory limitation on postconviction relief. As such, the court concluded that Clark's additional claims were procedurally barred. Nevertheless, the court went on to note that Clark's additional claims would fail even if the court considered them because the factual basis was sufficient and trial counsel could not have been ineffective for failing to object thereto.

On appeal, Clark does not dispute "the court's finding that his insufficiency of factual basis claim was procedurally barred." Brief for appellant at 30. Rather, Clark argues that "because the lower court decided the merits of Clark's insufficiency of factual basis claim, this Court must now consider whether the lower court erred" when it denied that claim. *Id.* We disagree.

There is no dispute that Clark's claim was procedurally barred. The fact that the district court also noted, hypothetically, that the claim would fail even if it was not procedurally barred is irrelevant to our analysis. The claim was procedurally barred, and we affirm the district court's denial of Clark's motion for leave to supplement his motion for postconviction relief.

Clark next assigns that the district court committed plain error in accepting his no contest plea on the grounds that both the prosecutor and trial court judge failed to disclose conflicts of interest and that each of his three attorneys (trial, appellate, and postconviction) were ineffective for failing to raise those claims of misconduct. Clark raises these issues for the first time in this appeal, having failed to raise them at any time during trial, on direct appeal, or during the postconviction proceedings.

A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). Plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court. *Id.* Both Clark's underlying allegations of misconduct and trial counsel's alleged ineffectiveness could have been litigated on direct appeal, and we will not address those claims.

Clark also raises ineffectiveness claims against both appellate counsel and postconviction counsel for failing to raise Clark's allegations of misconduct. Importantly, Clark's first opportunity to raise the ineffectiveness of appellate counsel claim was during the postconviction proceedings. Thus, that claim was not procedurally barred following Clark's direct appeal. See *State v. Sepulveda*, 278 Neb. 972, 775 N.W.2d 40 (2009) (ineffectiveness of appellate counsel claim not procedurally barred when raised at first opportunity during postconviction proceedings). However,

Clark failed to raise his ineffectiveness of appellate counsel claim during the postconviction proceedings below, and an appellate court will not consider allegations not presented to the district court for disposition through the defendant's verified motion for postconviction relief or passed upon by the postconviction court. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). Thus, while Clark could have raised appellate counsel's alleged ineffectiveness before the postconviction court, he failed to do so, and we will not address that claim.

That leaves only Clark's claim of ineffectiveness of postconviction counsel. We note that Clark's final assignment of error likewise raises an ineffectiveness of postconviction counsel claim. However, postconviction relief cannot be obtained on the basis of ineffective assistance of postconviction counsel. *State v. Hessler*, 288 Neb. 670, 850 N.W.2d 777 (2014). There is no constitutional guarantee of effective assistance of counsel in a postconviction action and, therefore, no claim for ineffective assistance of postconviction counsel. *Id.* Accordingly we reject any argument predicated on alleged ineffectiveness of postconviction counsel.

CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Clark's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.