IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


STATE V. CHEAIRS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

KEVIN M. CHEAIRS, APPELLANT.


Filed April 27, 2021.    No. A-20-389.


Appeal from the District Court for Sarpy County, GEORGE A. THOMPSON, Judge, on appeal thereto from the County Court for Sarpy County, PATRICIA A. FREEMAN, Judge. Judgment of District Court affirmed.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.


RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Kevin M. Cheairs appeals from an order of the Sarpy County District Court which affirmed his county court conviction and sentence for sexual assault in the third degree. Cheairs challenges the sufficiency of the evidence, the denial of his motion for new trial, and the conditions of probation imposed. He also claims he received ineffective assistance of appellate counsel on appeal to the district court. We affirm.

## II. BACKGROUND

On July 13, 2018, the State filed a criminal complaint in the county court for Sarpy County charging Cheairs with one count of sexual assault in the third degree, a Class I misdemeanor, in

violation of Neb. Rev. Stat. § 28-320 (Reissue 2016). The charge stemmed from an incident that occurred between Cheairs and J.M. on June 26, during which J.M. alleged that Cheairs subjected her to sexual contact without her consent. The county court held a bench trial on March 13, 2019. The evidence offered by the parties included surveillance camera footage of fragments of the encounter between Cheairs and J.M., as well as testimony from J.M., Cheairs, and other witnesses.

J.M. testified at trial that she went to a Kwik Shop in Bellevue, Nebraska, "between 4:30 and five o'clock" in the morning. Cheairs confirmed that he was at the same Kwik Shop during this same timeframe. Two surveillance cameras captured the interaction between Cheairs and J.M. on June 26, 2018, and the two video files derived from this surveillance footage, labeled as "BaseName-06.avi" (Base 6) and "BaseName-07.avi" (Base 7), were offered into evidence as exhibit 6. The video files provided different angles of the interaction between Cheairs and J.M. We note that at several points in Base 6, the footage freezes for periods of time and does not show the actions of either Cheairs or J.M. during those periods. The camera angle in Base 7 does not show with clarity any movement or actions by the parties inside J.M.'s vehicle.

The surveillance footage shows J.M. initially pulling into a parking stall in front of the Kwik Shop, leaving her Ford Explorer, and entering the store. A few seconds after she entered the store, a white Crown Victoria drove behind her vehicle from the cameras' left and continued out of frame to the right. After leaving the cameras' line of sight, the Crown Victoria backed into view from the right, orienting itself to pull into the parking spot next to J.M.'s Explorer before veering into the next stall over to the right so that there was an empty stall between J.M.'s Explorer and the Crown Victoria. Afterwards, J.M. exited the store and the cameras show her attention being drawn to the right as she came out and reentered her vehicle. After J.M. sat in her Explorer and closed the driver's door, Cheairs appeared to walk toward the Kwik Shop's door only to stop and walk toward J.M. in her vehicle. Cheairs stood beside the Explorer's driver's side door and appeared to be talking with J.M. with his hands in his pockets while J.M.'s window was rolled down. After approximately 40 seconds, Cheairs turned around and began to walk toward his vehicle. He then turned around and headed back to J.M.'s Explorer.

After he returned to stand by the driver's door of the Explorer, Cheairs leaned on the open window frame of the driver's door with at least his left arm. Ten seconds later, Cheairs pulled his left arm from the window with a slight jolt and wiped his hand on his left pant leg. He resumed leaning on the open window frame with his left arm. Just over 30 seconds later, Cheairs turned and faced the store with his hands in his pockets while still close to the Explorer's driver's side door. Shortly thereafter, Cheairs walked back to his vehicle and then returned to his position next to the Explorer's driver's side door with a cigarette, which he lit and held in his left hand. He again leaned on the open window frame of the driver's door for a brief time before straightening up, appearing to continue talking to J.M. for approximately a minute and a half. The footage then shows Cheairs backing up slightly and making a hand motion in J.M.'s direction before he began to walk back to the Crown Victoria. Ten seconds later, J.M. pulled out from her parking spot and drove away. Approximately 30 seconds later, Cheairs did the same. Neither video file clearly depicts Cheairs making physical contact with J.M.'s person.

J.M. testified at trial that she was texting a friend of hers after she had reentered the Explorer. She stated that as she was doing so, Cheairs "walked up . . . to [her] truck [and]

introduced himself." In response, she introduced herself and "asked him how he was doing," to which Cheairs replied that "he was fine." She further testified that Cheairs "walked away for a second to his car, came back, and he leaned on the door of the . . . truck." She recalled that Cheairs leaned on the driver's door with his arms folded and shortly after "reached in . . . and . . . grabbed [her] left breast and squeezed it" while commenting that she had "nice boobs." J.M. then said that she told Cheairs that "if he ever touched [her] again [she would] f'n kill him." She then recounted that "he walked away again" and "while he was walking away [she] fumbled for something in [her] truck" to defend herself with "if he touched [her] again." J.M. testified she was "nervous" and did not "know what to do" when he came back to her Explorer and stood beside the driver's door "for a couple more minutes" while smoking a cigarette. She said she was "frozen until he walk[ed] away," and she drove away just after.

Cheairs testified that he drove to the Kwik Shop to throw out trash that was in his vehicle. He said that he threw some of the trash out, "started to leave, realized [he] forgot all the rest of the trash[,] and started to throw the rest of the trash away." He said that as he was throwing out this last bit of trash, J.M. walked out of the store and commented, "[T]hat's a nice car," referring to Cheairs' Crown Victoria. He recalled that after he approached her vehicle, they began to talk about the condition of I-80 and "the new 30 or 34 and 75 exchange in Plattsmouth." During their conversation, "she sparked up a cigarette" and Cheairs did the same after returning to his car to grab his cigarettes. He did not recall ever introducing himself to J.M., nor did he remember J.M. introducing herself to him. He further denied any alleged physical contact with J.M.'s person. He acknowledged leaning on her Explorer "with [his] right arm" and shoulder rather than with both arms as J.M. testified. He described that their conversation ended "amicably" and that he left shortly after J.M. drove away.

J.M. returned to the Kwik Shop in the afternoon the same day. She asked a store employee if he knew someone with Cheairs' description and said that she needed "to get the tag number on his car." She told an employee about the earlier encounter and that Cheairs had grabbed her breast, and she asked whether she could get footage from the store's surveillance cameras.

On June 29, 2018, J.M. reported the encounter with Cheairs to the Bellevue Police Department. Officer James Severn testified at trial that he was dispatched to investigate that report the same day. He recalled that after he took J.M.'s statement, he went to the Kwik Shop and spoke with the store's employees, but could not access the footage until the following day. Officer Severn testified that although the video did not show any physical contact between Cheairs and J.M., his observations of the footage corroborated J.M.'s earlier statements, and he began to make efforts to contact Cheairs. He told Cheairs over the phone that he needed Cheairs to come and speak with him, and Officer Severn recalled that Cheairs agreed to do so. However, Cheairs did not immediately show up, and after Officer Severn tried to call Cheairs again, Cheairs called the police department wanting "to know what [the case] was about." Officer Severn reported that after that phone call, he had gone to Cheairs' registered address, but could not make contact with Cheairs. He attempted to call Cheairs again while outside the registered address and received no answer. Immediately thereafter, he received a phone call notifying him of Cheairs' legal representation, and was told that he "would not be able to speak with [Cheairs]." Officer Severn wrote up a citation for Cheairs, and Cheairs came outside to receive it.

Following trial on March 13, 2019, the county court entered an order on March 21 finding Cheairs guilty of third degree sexual assault. On March 29, Cheairs' trial counsel filed a motion for new trial, asserting the county court's decision was contrary to the weight of the evidence and not proved beyond a reasonable doubt. After his trial counsel filed this motion, Cheairs retained new counsel who filed an amended motion for new trial on July 24. The amended motion alleged there were "newly discovered facts within the State's evidence," that "the findings of facts and conclusions of law of the Court were based upon incomplete analysis of the evidence before the Court," and Cheairs' trial counsel was ineffective by failing to present evidence "in connection with the window being rolled up so high that it is extremely unlikely that" Cheairs could have committed third degree sexual assault and by failing to challenge J.M. "as to her false testimony and omissions of facts and statements." The county court denied Cheairs' motion in an order entered on October 29, noting that "ineffectiveness of counsel [is] not a proper basis for a court to grant a new trial" and the "law and facts presented at the original trial were sufficient to find" Cheairs guilty of third degree sexual assault.

On December 19, 2019, the county court sentenced Cheairs to probation for a term of 24 months, subject to several conditions that we will address later in our analysis below.

Cheairs then appealed his conviction and sentence to the district court. In his statement of errors filed with the court, Cheairs claimed that he "did not have effective assistance of counsel at his bench trial . . . in that his attorney . . . was not prepared, did not review the evidence adequately to find the exculpatory video[,] and failed to adequately prepare with Defendant"; that the county court should have granted his motion for new trial because the "information provided did and does show the innocence of Defendant"; and that "the sentence given was excessive and included terms of probation beyond what was just and reasonable under the circumstances, such as a lie detector test, alcohol prohibition, and other restrictions beyond the scope of the offense alleged."

In an order entered on May 15, 2020, the district court affirmed the county court's conviction, sentence, and order denying Cheairs' motion for new trial. The district court found that Cheairs "failed to specifically allege trial counsel's deficient performance," but determined that even if he had alleged trial counsel's deficiencies with the required specificity, Cheairs' "trial counsel's performance was competent and similar to other counsel who practice criminal law." The court further found no error in the county court's denial of Cheairs' amended motion for new trial. Finally, the district court concluded Cheairs' sentence was neither excessive nor an abuse of discretion.

Cheairs then timely appealed the district court's order with new counsel.

III. ASSIGNMENTS OF ERROR

Cheairs claims, reordered and restated, that (1) the evidence was insufficient to support his conviction, (2) the county court and district court erred with regard to his motion for new trial, (3) the county court abused its discretion in imposing sentence and the district court erred in affirming it, and (4) he received ineffective assistance of appellate counsel when his first appellate counsel (a) failed to assign as error and argue the sufficiency of the evidence on appeal to the district court, and (b) failed to specifically argue how his trial counsel was ineffective.

## IV. STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court. *Id.*

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017).

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020).

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error, while the determination of whether counsel's performance was deficient and whether the defendant suffered prejudice as a result under the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test is reviewed de novo. *State v. Dubray*, *supra*.

An appellate court reviews criminal sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020).

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Cheairs claims on appeal that the evidence produced at trial was insufficient to convict him of third degree sexual assault. However, as he concedes in his appellate brief, his first appellate counsel failed, on appeal to the district court, to assign as error the insufficiency of the evidence. As a result, this issue is not properly before this court. See *State v. Anderson*, 14 Neb. App. 253, 706 N.W.2d 564 (2005) (where cause has been appealed to higher appellate court from district court exercising appellate jurisdiction, only issues properly presented to and passed upon by district court may be raised on appeal in absence of plain error). Notwithstanding this procedural

bar, we will later address this matter through the lens of Cheairs' claim that his first appellate counsel was ineffective for failing, on appeal to the district court, to raise sufficiency of the evidence.

## 2. MOTION FOR NEW TRIAL

Cheairs claims the county court abused its discretion in denying his motion for new trial and the district court erred in affirming the county court's denial. While the amended motion for new trial contained several asserted grounds for a new trial, Cheairs' sole argument regarding this matter contained in his brief on appeal is that the motion should have been granted because "[t]he evidence was insufficient as a matter of law to support the verdict as argued above," referencing his argument regarding the insufficiency of the evidence. Brief for appellant at 25. As previously noted, Cheairs failed to include an independent error contesting the sufficiency of the evidence in his statement of errors to the district court. However, his first motion for new trial asserted "[t]he verdict rendered [was] not supported by the testimony at trial and the Court's Opinion and Order is contrary to the weight of the evidence offered during the trial and does not meet the burden of proof beyond a reasonable doubt." His amended motion similarly asserted "[t]hat the findings of facts and conclusions of law of the Court were based upon incomplete analysis of the evidence before the Court." The county court found the evidence sufficient to sustain its findings. On appeal to the district court, Cheairs argued the county court "should have ruled that Defendant was entitled to a new trial because . . . the information provided did and does show [his] innocence[.]" The district court affirmed the county court's order denying Cheairs a new trial.

A trial court's order denying a motion for new trial is reviewed for an abuse of discretion. *State v. Wood*, 296 Neb. 738, 895 N.W.2d 701 (2017). In order for a new trial to be granted, it must be shown that a substantial right of the defendant was adversely affected and that the defendant was prejudiced thereby. *Id.* For the reasons we explain later in our analysis of Cheairs' claim that his first appellate counsel was ineffective for failing to argue the insufficiency of the evidence on appeal to the district court, we conclude the county court did not abuse its discretion in denying his motion for new trial on this ground. Likewise, the district court did not err in affirming that denial.

## 3. CONDITIONS OF PROBATION

Cheairs claims on appeal that the county court abused its discretion in imposing, and the district court erred in affirming, the sentence of probation subject to certain conditions. Cheairs does not contest the county court's sentence of 24 months' probation. Rather, Cheairs' sole assertion related to his sentence is that certain conditions included in the probation order "were not reasonably related to his offense" and "amounted to an abuse of discretion." Brief for appellant at 31. We therefore limit our review to Cheairs' complaints about certain probation conditions.

Neb. Rev. Stat. § 29-2262 (Cum. Supp. 2020) provides trial courts with considerable discretion in fashioning conditions of probation, but also provides some guidance as to what courts are to consider in doing so. *State v. Paulsen*, 304 Neb. 21, 932 N.W.2d 849 (2019). When probation conditions are challenged on direct appeal, the standard of review depends on the challenge asserted. *Id*. Claims that the condition is not sufficiently tailored to an offender's rehabilitative

process is reviewed for an abuse of discretion, while a question of whether a condition of probation is authorized by statute is a question of law subject to de novo review. See *id*. Cheairs does not challenge the trial court's authority to impose any of the conditions; rather, he challenges only on the basis that the conditions are "not reasonably related to his offense." Brief for appellant at 31. Therefore, we will review Cheairs' probation conditions for an abuse of discretion. We will also keep in mind that the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. See *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020).

Cheairs was convicted of third degree sexual assault under § 28-320, a Class I misdemeanor. Neb. Rev. Stat. § 28-106(1) (Reissue 2016) provides that a Class I misdemeanor may be punished by not more than 1 year's imprisonment, a $1,000 dollar fine, or both. Neb. Rev. Stat. § 29-2263 (Reissue 2016) requires that the term of probation shall not be more than 5 years for conviction of a felony or second offense misdemeanor and not more than 2 years for conviction of a first offense misdemeanor. On December 19, 2019, the county court sentenced Cheairs by oral pronouncement to 24 months' probation. The court entered an order of probation the same day setting forth the same sentence. The duration of Cheairs' sentence is within the range permitted by statute. The court also required Cheairs to register as a sex offender in accord with the Nebraska Sex Offender Registration Act. The court orally pronounced the conditions of Cheairs' probation term, and the court's order of probation reflected the same. Challenging "the initial conditions of probation" is "the proper subject of an appeal from the judgment of the initial sentence[.]" *State v. Paulsen*, 304 Neb. at 27-28, 932 N.W.2d at 854.

Cheairs contests the following probation terms, as numbered in the "Order of Probation": term 11, prohibiting his use and possession of alcoholic beverages and controlled substances not prescribed by a physician; term 12, requiring him to complete a polygraph every 6 months prior to and "through the completion of treatment"; term 22, prohibiting his possession of firearms or other dangerous weapons; term 24, restricting him from going to any establishment where alcohol or gambling is the primary source of income; term 27, prohibiting his possession of any sexually explicit material in any form and his frequenting of any business that sells or promotes such material; term 28, requiring him to sign and comply with the terms of a Digital Device User Agreement; and term 30, requiring his participation in Moral Reconation Therapy. Although Cheairs does not specifically challenge term 25, which sets forth jail time, Cheairs references the jail time and generally refers to the other challenged probation terms in his brief, and then broadly asserts that "[t]hese terms are not reasonably related to his offense and amounted to an abuse of discretion." Brief for appellant at 36.

We initially note that Cheairs did not object to the terms of probation when the county court specifically set forth each condition of probation at the sentencing hearing. As pointed out by the State, "the county court even made a point to ask Cheairs if he could submit himself to the terms of probation that it laid out verbally and at length on the record, which he said that he could without argument or comment." Brief for appellee at 27. "Cheairs agreed at sentencing that he could abide by those terms." *Id*. It is true that after orally informing Cheairs of each condition, the

court asked him, "Do you believe that you can abide by those terms and conditions?" Cheairs replied, "I do, your honor."

We read the State's brief to suggest that Cheairs' failure to object to the terms of probation at sentencing arguably waived his ability to challenge those terms on appeal. We observe that the Nebraska Supreme Court has taken such a position with regard to failing to object to conditions for postrelease supervision at the time of sentencing. In *State v. Phillips*, 297 Neb. 469, 900 N.W.2d 522 (2017), the defendant was convicted of third degree sexual assault of a child, and he was later charged and convicted of failure to register as required by the Sex Offender Registration Act. Pursuant to a plea agreement, the defendant was sentenced to 12 months' imprisonment and 12 months' postrelease supervision, which set forth numerous conditions. The defendant appealed from that sentencing order, arguing that his sentence was excessive and that certain postrelease conditions were unconstitutional. The Supreme Court found no merit to the defendant's claim of an excessive sentence. See *id*.

As for the defendant's challenge to the conditions of postrelease supervision, the Nebraska Supreme Court found that the defendant had waived any objection to the conditions of his postrelease supervision because "at no point during [the sentencing] hearing did [the defendant] specify the issues and concerns he had with the conditions imposed upon him." *Id*. at 478, 900 N.W.2d at 528. The court noted in pertinent part:

> We observe that notice is essential to the resolution of whether Phillips waived any objection to the conditions of his postrelease supervision. Fundamental to the question of notice are whether the defendant was adequately informed about the conditions of his postrelease supervision and whether the defendant was given the opportunity to challenge those conditions. If a defendant is not adequately informed about the conditions imposed or does not receive an opportunity to challenge them, there can be no waiver.

> We conclude that, in this case, Phillips was adequately informed of the conditions of his postrelease supervision and was given the opportunity to challenge those conditions. At his sentencing hearing, Phillips refused to sign an attestation to the conditions indicating that he agreed to the conditions of his postrelease supervision. Instead, Phillips agreed only to sign an acknowledgement that he had received those conditions.

*Id.*

As a result, the Supreme Court concluded that since the defendant had notice of the conditions but failed to challenge those conditions at the time of sentencing, he had waived any right to challenge those conditions on appeal "because his objections were insufficient to preserve them." *Id*. See, also, *State v. Shaull*, 301 Neb. 82, 916 N.W.2d 900 (2018) (objections made to certain terms of postrelease supervision preserved, but where no objection was made to any conditions of employment on basis they did not bear reasonable relationship to purpose of supervision, such objection was waived); *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018) (defendant objected at sentencing to numerous fees imposed in connection with postrelease supervision on basis defendant was indigent and without financial means to pay fees; challenge to conditions imposed preserved).

However, the waiver principles articulated in the above-noted Nebraska Supreme Court cases have not yet been applied in cases involving direct appeals challenging probation terms, even though postrelease supervision and probation are generally treated similarly. See *State v. Dill, supra* (probation includes postrelease supervision, and a person sentenced to postrelease supervision is a probationer; postrelease supervision is to be treated as a form of probation, and the usual rules of law governing probation will ordinarily apply to postrelease supervision). Other statutes apply procedures of probation to postrelease supervision. *Id*. All sentences of postrelease supervision are served under the jurisdiction of the Office of Probation Administration and are subject to conditions imposed under § 29-2262. *State v. Dill, supra*. We have said that when a court sentences a defendant to probation, it may impose any conditions of probation that are authorized by statute. *Id*. Because postrelease supervision is a form of probation, the same rule necessarily follows for postrelease supervision. *Id*.

Notably, in *State v. Wood*, 245 Neb. 63, 511 N.W.2d 90 (1994), at the time of sentencing, the defendant made no objection to the sentence of 36 months' probation, including a condition that the defendant reimburse the county for expenses incurred in providing a court-appointed attorney who had been appointed earlier based upon a finding of the defendant's indigence. When asked if the defendant had any objection to the sentence, the defendant replied in the negative. On direct appeal, the defendant challenged the reimbursement of attorney fees as a condition of probation without first determining that she was no longer indigent. The State argued the issue should not be heard on appeal because the defendant made no objection to the condition at sentencing. The Nebraska Supreme Court stated that "[a]bsent plain error, when an issue is raised for the first time in an appellate court, it will be disregarded, inasmuch as the court whose judgment is being reviewed cannot commit error regarding an issue never presented and submitted for disposition." *Id.* at 66, 511 N.W.2d at 94. However, the Supreme Court concluded that "since it is the sentence which is the judgment, [the defendant's] objection to her sentence was through the appeal procedure as set forth in Neb. Rev. Stat. § 25-1911 et seq. [appellate jurisdiction]." *State v. Wood*, 245 Neb. at 66, 511 N.W.2d at 94. Therefore, the Supreme Court determined the matter was properly before it and concluded that the district court abused its discretion by imposing the condition of probation which required the defendant to reimburse the county for her court-appointed attorney fees without first determining the defendant was no longer indigent. That portion of the defendant's sentence was vacated.

In *State v. Bond*, 23 Neb. App. 916, 877 N.W.2d 254 (2016), this court considered the possibility of waiver due to the defendant's failure to object to the terms of probation at the time of sentencing. However, given the facts present in that case, we did not have to decide the issue on that basis. The defendant's challenge of the probation provision prohibiting her from having any contact with her boyfriend was not waived because the defendant expressed concern about the difficulty of such a provision at the time of sentencing.

In the present case, similar to *State v. Phillips, supra*, Cheairs and his counsel were adequately informed about the conditions of Cheairs' probation terms and were given an opportunity to challenge those conditions. Our review of the record shows that neither Cheairs nor his counsel objected or raised any concern regarding the conditions of probation imposed by the county court. If we were to apply *State v. Phillips,* then absent plain error, we would have to find

that Cheairs waived his ability to challenge his probation conditions, and we would affirm those conditions without further consideration.

However, in light of *State v. Wood, supra*, and because the Nebraska Supreme Court has not yet specifically applied waiver to challenges of probation terms on direct appeal, we will proceed to consider Cheairs' argument related to the terms of probation as described previously. We caution, however, that in light of the waiver principles addressed in *State v. Phillips, supra*, and the other postrelease supervision cases noted, it would certainly be prudent for attorneys or defendants to make objections to probation terms at the time of sentencing. This would provide a better opportunity to address any concerns about such conditions more immediately with the trial court and would also ensure the preservation of any arguments related to the same on direct appeal.

As to Cheairs' broad argument that certain probation terms were not reasonably related to his offense, we note that probation conditions are not limited to being tied only to the offense committed. Rather, a trial court has considerable discretion in fashioning conditions of probation and can order reasonable conditions it deems necessary to make certain the offender will lead a law-abiding life, and which are reasonably related to the rehabilitation of the offender. See *State v. Paulsen*, 304 Neb. 21, 932 N.W.2d 849 (2019). Section 29-2262 provides, "When a court sentences an offender to probation, it shall attach such reasonable conditions as it deems necessary or likely to insure that the offender will lead a law-abiding life." Numerous conditions which may be imposed are set forth in § 29-2262(2)(a) through (s). Notably, § 29-2262(2)(q) provides that the court may, as a condition of a sentence of probation, require the offender to "satisfy any other conditions reasonably related to the rehabilitation of the offender."

As noted earlier, Cheairs claims the probation terms set forth previously "amounted to an abuse of discretion." Brief for appellant at 31. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Lauhead*, 306 Neb. 701, 947 N.W.2d 296 (2020).

We find no abuse of discretion here. Cheairs argues only that the probation conditions were not reasonably related to his offense. However, as set forth above, the conditions only need to relate to making sure Cheairs will lead a law-abiding life and be reasonably related to his rehabilitation. See *State v. Paulsen, supra*. See, also, *State v. Katzman*, 228 Neb. 851, 424 N.W.2d 852 (1988) (within court's power to impose any reasonable probation condition designed to promote respect for law and to facilitate rehabilitation). The probation terms imposed upon Cheairs will support Cheairs in leading a law-abiding life and are reasonably related to him being successful in his rehabilitation. Therefore, we cannot say there was any abuse of discretion by the county court in ordering them, nor in the district court affirming them.

### 4. INEFFECTIVE ASSISTANCE OF FIRST APPELLATE COUNSEL

Cheairs claims his first appellate counsel was ineffective on two bases. On appeal to this court, he is represented by different counsel than his first appellate counsel and original trial counsel. This is therefore his first opportunity since the district court's May 15, 2020, order to raise an ineffective assistance claim related to his first appellate counsel.

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit, or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Keeping these governing principles in mind, we turn to address Cheairs' claims that his first appellate counsel was ineffective by failing to (1) assign as error and argue to the district court the sufficiency of the evidence and (2) specifically argue how his trial counsel was ineffective.

(a) Failure to Argue Sufficiency of Evidence

Cheairs' first appellate counsel did not independently contest the sufficiency of the evidence in his statement of errors to the district court. When analyzing a claim of ineffective assistance of appellate counsel, courts will often begin by determining whether the defendant suffered prejudice by appellate counsel's failure to raise a claim. *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016). If the claimed deficiency of appellate counsel's performance is the failure to raise a claim on appeal, the court will look at the strength of the claim that appellate counsel failed to raise. *Id.* Much like claims of ineffective assistance of trial counsel, the defendant must show that but for counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different. *Id.*

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

The county court convicted Cheairs of third degree sexual assault. A person is guilty of third degree sexual assault when that person "subjects another person to sexual contact . . . without consent of the victim" when that sexual contact "shall not have caused serious personal injury to the victim." § 28-320. Sexual contact is defined in part as "intentional touching of the victim's

clothing covering the immediate area of the victim's sexual or intimate parts." Neb. Rev. Stat. § 28-318(5) (Reissue 2016). Sexual contact includes only such conduct which can reasonably be construed as being for the purpose of sexual arousal or gratification. *Id.*

In support of its conclusion that Cheairs was guilty of third degree sexual assault, the county court found J.M.'s testimony regarding the encounter "to be corroborated by the video evidence," and the evidence of Cheairs "leaning on the window with his head nearly inside [J.M.'s] vehicle for nearly a minute" indicated "a level of familiarity by Mr. Cheairs that does not match the other evidence." The court found the footage and other evidence, including J.M.'s testimony that Cheairs grabbed her left breast and said, "Nice boobs," to have satisfied the State's burden to prove Cheairs guilty of third degree sexual assault.

On appeal to this court, Cheairs highlights two major issues concerning the evidence presented at trial: the surveillance camera footage of the encounter between Cheairs and J.M. and the weight given to J.M.'s testimony by the county court.

Cheairs describes the surveillance camera footage as providing "limited value due to poor resolution, lighting, . . . angles, and the playability on one video," as the footage contained in Base 6 "freezes right before the exact moment that J.M. testified that the assault occurred." Brief for appellant at 19. We have previously described the contents of the camera footage from Base 6 and Base 7 regarding the encounter between Cheairs and J.M. on June 26, 2018. Neither video file showcases movement or contact occurring between Cheairs and J.M. inside J.M.'s vehicle, but both show Cheairs to be leaning on J.M.'s vehicle and in close quarters with J.M. for the majority of their encounter.

The bulk of Cheairs' argument concerns the nature of J.M.'s testimony. He argues that "J.M.'s testimony lacked sufficient probative force and was not corroborated on material facts or circumstances that tended to support her testimony about a sexual assault taking place." Brief for appellant at 19. His argument provides "six reasons" for why the county court erred in giving weight to J.M.'s testimony. *Id.* First, he argues that J.M.'s claim "did not match her actions" in that J.M. testified that Cheairs grabbed her breast "prior to Cheairs obtaining a cigarette from his vehicle" and she "threatened his life" after the contact, yet she did not "roll up her windows, lock her doors, and drive away" or otherwise "communicate for help." *Id.* Second, Cheairs asserts in a similar vein that the footage does not contain any "physical actions . . . that showed J.M.'s breast being grabbed or Cheairs reacting to his life being threatened[.]" *Id.* at 19-20. Third, Cheairs claims J.M.'s "testimony did not match the surveillance video as to the positioning of her window" in that "J.M. claimed her window was rolled down to conserve as much fuel as possible as opposed to her doing so to facilitate the communication with Cheairs," yet Base 7 showed J.M. "pulling into the parking stall with her driver's window up as evidenced by the reflecting artificial lights." *Id.* at 20. Fourth, Cheairs emphasizes that "this was a delayed report of a crime" as J.M. only "reported [the encounter] a day or two later." *Id.* Fifth, Cheairs points out that J.M. "misrepresented the relationship status of the person she was [texting] with before, during, and after" the encounter with Cheairs, noting that J.M. testified at trial that she was "texting a friend" yet "acknowledged writing in her statement to the police that the person she was texting was her boyfriend even though that was not factual." *Id.* at 20-21. Finally, Cheairs argues that J.M.'s status as a convicted felon should have resulted in her testimony being "more scrutinized simply because of her status as a

felon" and such status "establishes that she has at least one life experience" of being involved in the processes of the criminal justice system. *Id.* at 21. Cheairs argues that "those life experiences call into question her explanation for her delayed reporting" and other actions during and after the encounter with Cheairs. *Id.*

Cheairs attempts to liken this case to *State v. George*, 228 Neb. 774, 424 N.W.2d 350 (1988). In that case, the Nebraska Supreme Court found that the evidence presented was insufficient to convict the defendant where "[t]he only testimony suggesting that the defendant had disturbed the peace of anyone came from the female bartender" who was a witness to the defendant and his brother's altercation with three white men. *Id.* at 775, 424 N.W.2d at 352. The court pointed out that the same bartender's testimony just a week before in the trial of the three white men was that her "peace and quiet" was not disturbed. *Id.* Despite this previous testimony, the bartender claimed at this defendant's trial that the defendant had "started the fight[,]" yet she also said "that she did not see anything happen before [the defendant] hit" one of the men. *Id.* On further cross-examination, she conceded "that she did not know who started the fight" and claimed "she did not see one white person throw a punch" despite that "the fighting lasted 10 to 15 minutes[.]" *Id.* at 776, 424 N.W.2d at 352. The defendant's conviction was reversed, as the evidence "border[ed] on the incredible" and "was so lacking in probative force that it was insufficient as a matter of law." *Id.*

We are not persuaded that this case is analogous to *State v. George, supra*. The bartender's testimony in that case fundamentally conflicted with her testimony given at the earlier trial for the three white men, and her concession "that she did not know who started the fight" together with her contradictory testimony concerning facts material to proving the essential elements of the charged offense could not sustain the defendant's conviction. See *id.* at 776, 424 N.W.2d at 352. In contrast, the inconsistencies that Cheairs directs this court's attention to do not support the notion that the essential elements of third degree sexual assault could not have been satisfied in this case. Rather, these inconsistencies go towards J.M.'s credibility as a witness.

Cheairs' first appellate counsel did not challenge Cheairs' conviction through an independent claim that the evidence was insufficient. However, Cheairs' present argument that this failure caused him prejudice essentially asks this court to reweigh the credibility of the primary witness for the State's case by directing our attention to J.M.'s apparent inconsistent statements and course of conduct during and after her encounter with Cheairs. As precedent makes clear, that is not within the purview of this court. See *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020) (appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, or reweigh evidence; such matters are for finder of fact). Taking the record in the light most favorable to the prosecution, we cannot say a rational fact finder could not have found Cheairs guilty of third degree sexual assault in light of the record before us. Cheairs therefore cannot establish prejudice from his first appellate counsel's failure to raise this argument on appeal to the district court. Cheairs' claim of ineffective assistance of appellate counsel on this ground fails.

(b) Failure to Argue Trial Counsel's Ineffectiveness

Cheairs assigns as error that he "received ineffective assistance of appellate counsel when his appellate counsel failed to specifically argue how his trial counsel was ineffective." Brief for

appellant at 3. He does not elaborate as to what his first appellate counsel failed to specifically argue. In *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019), the Nebraska Supreme Court stated, "We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity." The specificity rule set forth in *Mrza* should likewise apply to these circumstances where a second appellate counsel is making a claim for the first time against a first appellate counsel on appeal to this court from the district court sitting as an appellate court. Consequently, we conclude that Cheairs has failed to allege the deficient performance of his first appellate counsel with the specificity required by *Mrza* in this assignment of error. We therefore will not address this assigned error, and this alleged error is not preserved for postconviction review. See *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014) (claim insufficiently stated is no different than claim not stated at all, and insufficiently stated assignment of error and accompanying argument will not prevent procedural bar accompanying failure to raise all known or apparent claims of ineffective assistance of counsel).

## VI. CONCLUSION

For the reasons set forth above, we affirm Cheairs' conviction and sentence.

AFFIRMED.

- 14 -